## STATE v. ORFANAKIS.

### SYLLABUS BY THE COURT.

1. Where there is sufficient evidence to justify the conclusion that different persons charged with a crime are all acting with a common purpose and design, the actions and

State. v. Orfanakis, 22 N. M. 107.

declarations of each from the commencement to the consummation of the offense are evidence against the others.

P. 111

2. An exception to an instruction is not specific which asserts that the instruction is contrary to law, without pointing out the grounds of legal objections.

P. 112

3. A requested instruction which is erroneous is properly refused.

P. 114

4. No error can be predicated on the refusal of the trial court to give an instruction where the instruction given by the court on its own motion fully and completely covered everything contained in the refused instruction.

P. 116

5. Where there is evidence of motive, an instruction as to the effect of the absence of motive is improper, and should be refused.

P. 117

6. Ordinarily the verdict of a jury will not be disturbed in the appellate court, where it is supported by any substantial evidence.

P. 119

7. Where court and counsel assume that testimony would be connected up to show that a conspiracy existed, if the state failed to prove the conspiracy, it was incumbent on the defense to direct the attention of the trial court to that fact, and, having failed to do so, the point cannot be raised on appeal.

P. 110

8. Exclusion of cross-examination as to whether a certain kind of hat which witness had testified was worn by the accused on the night of the homicide was a popular hat,

or one worn by other persons in the town at the time, of-fered as a test of the witness' memory about the hat, was not error.

P. 111

9.   An objection to an instruction that there was no evi-dence in the case as to involuntary manslaughter, in the ab-sence of exception or requested instruction on the subject, will not be considered on appeal, on the theory that the statement in the instruction disclosed that the attention of the court had been called to the question, or that the court had, of its own motion, considered the question.

P. 115

10.   Evidence in a prosecution for homicide **held** insuffi-cient to require an instruction as to the effect of the drunken condition of the accused at the time of the homicide.

P. 116

11.   Where accused was identified by two witnesses as having been at the place of homicide, and he was shown to have been in company with the other defendants immedi-ately before the homicide, a motion to strike out testimony as to a confession of defendant, on the ground that the cor-pus delicti and the connection of the defendant with the of-fense had not been proven, was properly denied.

P. 117

12.   Though a witness who testified as to a confession by accused stated that he told accused that it might be easier on him to tell the truth than it would be to try and hide it, where the accused had given the substance of his confes-sion before this statement was made, evidence of the con-fession was properly admitted.        P. 118

13.   Where three defendants were indicted for murder, but only one was tried, the verdict of conviction relates to the one on trial, though the caption of the verdict names all the defendants, and the one tried is not named in the body of the verdict.        P. 120

State v. Orfanakis, 22 N. M. 107.

On Motion for Rehearing.

14. The admission of certain evidence in a criminal trial, even if erroneous, does not constitute a deprivation of due process of law, in violation of Const. art. 2, §§ 12, 18, and Const. U. S. Amend. 14, § 1.

P. 121

Appeal from District Court, Colfax County; Leib, Judge.

Hristos Emmanuel Orfanakis, alias Crist ·Orfanus, alias Christos Emmanuel Orfanakis, was convicted of murder in the second degree, and appeals. Affirmed.

J. LEAHY of Raton, for appellant.

HARRY S. BOWMAN, Assistant Attorney General, for the State.

## STATEMENT OF FACTS.

The appellant, Hristos Emmanuel Orfanakis, was jointly indicted with Elijah Perakis and Apostolakis Jivokias, charged with the murder of one Sem Tomas, alias Sam Tomas. Perokis and Jivokias were not arrested, and the case proceeded to trial with the appellant as sole defendant, who was convicted of murder in the second degree and sentenced to a term in the penitentiary of from 35 to 40 years.

## OPINION OF THE COURT.

HANNA, J.—[7] The first assignment of error is predicated upon the refusal of the trial court to strike certain portions of the testimony of the witness Thomas Walbank, who testified concerning a conversation between himself and one of the defendants jointly indicted with the appellant, which occurred on the night of the homicide, and which was not held in the presence of the appellant. After the entire conversation referred to had been detailed by the witness, a motion was made by counsel for defendant that the testimony be stricken out.

Whereupon the district attorney suggested that the state had a right to prove a conspiracy between the three parties indicted. While the record is not quite clear in this respect, it would seem that the court and counsel assumed that the testimony would be connected up in order to show that a conspiracy existed. No further objection was interposed by counsel for defendant, and if the state failed to prove the conspiracy which it had suggested, it was incumbent upon the defense to direct the attention of the trial court to this fact and renew his motion to strike the objectionable testimony. We conclude, therefore, that the appellant is in no position to urge his objection in this respect.

[1] It is seriously contended by the state that, even though it be admitted for the sake of argument that the question is before the court for determination, nevertheless the testimony of the witness was not improperly admitted, because it did not prejudice the rights of the appellant and was therefore harmless error, if error at all. We do not deem it advisable to enter into any lengthy discussion of the evidence in this connection, although the state's contention in this respect may be well grounded. There is in this connection, however, the further objection to the testimony in question, as urged by the appellant, to the effect that the introduction of testimony tending to establish such a conspiracy is contrary to law and all rules of evidence. While the brief of appellant is not clear as to the character of this last objection, we cannot agree with him if we understand his contention. Generally speaking, where there is sufficient evidence to justify the conclusion that different persons charged with a crime are all acting with a common purpose and design, the actions and declarations of each from the commencement to the consummation of the offense are evidence against the others. Kelley et al. v. People, 55 N. Y. 565, 14 Am. Rep. 342. See, also, People v. Van Tassel, 156 N. Y. 561, 51 N. E. 274; Tarbox v. State, 38 Ohio St. 581.

[8] The next error assigned by appellant is predicated upon the action of the trial court in sustaining an

objection of the district attorney to a question propounded
to the state's witness, Madison, upon cross-examination, as
to whether a certain kind of hat, which the witness had
testified was worn by the appellant on the night of the
homicide, was a popular hat, or one worn by other per-
sons in Van Houten at the time. The theory of the de-
fense in pursuing this line of cross-examination was based
upon an alleged right to test the witness' memory about
the hat. The ruling of the court was based upon the
ground that the defense could show that other hats of
the same kind were worn by other persons, as a matter
of defense, and that the question was immaterial as a
matter of cross-examination. We cannot see how the
question would have been effective upon the theory of
testing the recollection of the witness. He might have
known that other hats of a similar kind were worn by
other persons at this time, and he might not have known
that fact. In either event it would have been of little
value as a test of his memory in that particular. The
objection, however, is without merit because, so far as
the witness is concerned, the identification of the defend-
ant did not depend upon the kind of hat worn by the de-
fendant at the time.

[2] The next contention of appellant can be grouped
as including his propositions numbered from 3 to 7, in-
clusive, as treated in his brief, and is directed to the
alleged erroneous instructions of the trial court numbered
17, 21, 22, 23, and 24. In this connection the Attorney
General suggests that the exceptions are not specific, in
that they do not point out the alleged insufficiency of
the instructions upon legal grounds, and we hold with
the Attorney General in this contention.

In the case of State v. Gonzales, 19 N. M. 467, 144
Pac. 1144, in an opinion by the Chief Justice under a
state of facts where the defense excepted to a certain in-
struction for the reason that the same did not clearly,
concisely, and accurately state the law in defining reason-
able doubt, and that said instruction was ambiguous, mis-
leading, and contrary to law, this court said:

"The above exception, it will be noted, fails to point out specifically the error in the instruction. It is true it is stated that the instruction does not clearly, concisely, and accurately state the law in defining reasonable doubt, but wherein it fails in this regard is not set forth. It is also stated that the instruction is ambiguous, misleading, and contrary to law, but under the rule above stated, counsel should have pointed out specifically wherein such instruction was misleading, ambiguous, and contrary to law."

In the present case the exception was even more general than in the Gonzales Case, and it is only alleged that the instruction is not according to the evidence, nor the law as the same should be given. The exceptions as to the three instructions are therefore insufficient so far as they fail to point out the grounds of legal objection.

A different question, however, is presented as to the sufficiency of the exception upon the ground that the instructions were not according to the evidence. Instruction numbered 22 was based solely upon the matter of the testimony introduced by the defendant as to his character as a law-abiding citizen, and the duty of the jury in respect thereto. Instruction numbered 23 had to do solely with the fact that the defendant had concealed himself after the crime was committed, and the duty of the jury with respect to such evidence, if it found that he had so concealed himself. Instruction numbered 24 dealt solely with the duty of the jury in the matter of confessions. It is quite clear from the record that there was evidence of good character of the defendant as a law-abiding citizen; there was also evidence of the fact that the defendant concealed himself; there were also statements of the defendant, testified to by several witnesses, that might be regarded as of an incriminating character, tending to amount to a confession of the crime. While it is true that evidence as to the confession has a tendency to both inculpate and exculpate the defendant, yet it was for the jury to say what, if any, part of these statements were to be believed. This being the situation as to the evidence, it cannot be said that the three instructions referred to were not according to the evidence.

[3]   It is contended by appellant that the court should have included in its instruction numbered 23, some reference to the testimony of the defendant, to the effect that his concealment was induced by fear of action on the part of the friends of the deceased, and by reason of advice given him by his friends, who first brought him the word that he was being charged with the crime, and that the law required that what was said on the subject of the concealment should have been qualified by some language such as, "unless such concealment is otherwise explained." The state introduced evidence in its case in chief which tended to show that after the commission of the crime charged in the indictment, the appellant concealed himself.   The appellant met this evidence by admitting the concealment and showing that he had been advised by friends to conceal himself, and therefore the concealment was not prompted by a consciousness of guilt.   The court of its own motion, among other things, instructed the jury as follows:

"(23) The court instructs the jury that the fact that the defendant concealed himself, if you find he so concealed himself, may be shown by the state as a circumstance tending to indicate the guilt of the accused, and may be considered by you, along with other circumstances tending to connect the defendant with the commission of the crime charged in the indictment."

Evidence of concealment and explanation thereof being admissible in the case at bar, the legal effect of such evidence became a part of the law of the case.   But in this jurisdiction it has been repeatedly held that the failure of the court to instruct on a given proposition of law is waived unless an instruction containing a correct exposition of such law is tendered to the court, or the party excepts to an instruction given by the court, and in doing so specifically makes known the vice therein, so that the trial court is thereby afforded a proper opportunity to correctly instruct the jury.   Instruction 23 simply was directed to the legal effect of concealment.   Therefore, whether the court erred in failing to instruct the jury on the law of explanation of concealment depends upon whether the exception to instruction 23 specifically point-

ed out to the court the error in that instruction in failing to include therein this doctrine, or whether the appellant tendered to the court, in apt time, an instruction properly containing the law of the subject. The given instruction is made the subject of attack by appellant on various grounds, principally because it emphasized the evidence of the state on concealment, but made no mention of the evidence of explanation of concealment, but the exception was too general to call attention of the trial court to any alleged vice in the given instruction. Appellant refers but incidentally to the fact that the trial court should have given the requested instruction, tendered by him, concerning the legal effect of evidence explaining concealment. The requested instruction reads as follows:

"(2) You are instructed that if you believe from the evidence that the defendant attempted to escape, then the court instructs you that the inference that may be drawn from any act of this kind is strong or slight according to the facts surrounding the defendant at the time."

The requested instruction constitutes a comment on the weight of the evidence, and as such is violative of section 2796, Code 1915, and the court, therefore, properly refused to give the requested instruction.

[9] The instruction numbered 17 was to the effect that there was no evidence in the case as to involuntary manslaughter. Appellant argued that, even though there was no exception to this instruction, nevertheless the right to have the instruction reviewed by this court was not waived, because the giving of this instruction was assigned as error in the motion for a new trial, and the declaration of the court in the instruction to the effect that there was no evidence upon which an instruction on involuntary manslaughter could be based clearly disclosed that the attention of the court had been called to the point or question, or else the court had of its own motion duly considered this question, and an exception was therefore unnecessary because the purpose of an exception is to call the attention of the court to the point raised. We do not agree with appellant in this contention, and it is evident that the trial court was actuated by a desire to

instruct upon the law as to the several degrees of murder and manslaughter, and did not feel called upon to do an idle thing in giving an instruction upon involuntary manslaughter when not involved in the case, and therefore assigned as his reason for not instructing that there was no evidence in the case calling for such instruction. Our examination of the record discloses that there was no evidence that would support or require an instruction on involuntary manslaughter, but we do not desire to be understood as disposing of this question on its merits, in the absence of any exception to the instruction whatsoever. No instruction upon the subject was tendered to the court by the defendant, and his reference to the matter in the motion for a new trial does not correct the irregularity.

[4] Appellant further contends that his failure to except to instruction numbered 21, as given by the court, was not waived, because his requested instructions numbered 1 and 7, refused by the court, taken together, cover the law on the subject of alibi, and therefore sufficiently directed the attention of the trial court to the objections here urged as to the sufficiency of the instructions given. A careful examination of the requested instructions numbered 1 and 7, and instruction numbered 21, given by the court, indicates that all the matters contained in the refused instructions were substantially incorporated in the instruction given, and therefore no error in the refusal to give the requested instructions can properly be assigned. It was held in the case of Territory v. Torres, 16 N. M. 615, 121 Pac. 27, that no error can be predicated on the refusal of the trial court to give an instruction where the instruction given by the court on its own motion fully and completely covered everything contained in the refused instruction.

[10] The next point urged by brief of appellant is based upon the refusal of the trial court to give a certain instruction, numbered 5, which was tendered and requested by appellant. The instruction was to the general effect that if it appeared from the evidence that defendant at the time of the commission of the crime was

in a drunken condition, not voluntarily produced, such a condition might be taken into consideration as affecting his mental condition at the time of the commission of the crime, and as affecting the degree of homicide of which he might be found guilty. The Attorney General contends that the record does not disclose any evidence to show that the appellant was either involuntarily drunk, or that he was voluntarily intoxicated to the extent of rendering him incapable of harboring any criminal intent. We have carefully read the record, and there is no evidence other than that the defendant and his associates were drinking in the saloon. The sole evidence of an intoxicated condition comes from one of the witnesses for the defense, who testified that the defendant was quite drunk and could not play cards very well, but this was at a time prior to the homicide, and there is no evidence whatsoever as to his condition at the time of the commission of the crime. The instruction was properly refused, in view of the evidence disclosed by the record.

[5] The next objection urged by appellant is to the court's refusal to give instruction numbered 9, requested by the defendant, which was to the effect that a failure to show motive on the part of the accused in the commission of the crime was a circumstance in favor of his innocence. We do not agree that it can be contended that there was no showing of motive, as there was some evidence tending to establish a motive. Where there is evidence of motive, an instruction as to the effect of the absence of motive is improper and should be refused. Wharton (3d ed.) on Homicide, 915.

[11] The next point argued is that the motion to strike out all the evidence of the witness Emerson P. McGuire, relating to the alleged confession of defendant, should have been sustained, because, first, the corpus delicti had not been proven, and the defendant had not been shown to have been connected therewith. An examination of the record discloses that the defendant was, at least circumstantially, shown to have been present and participating in the homicide. He was identified by two witnesses as having been seen at the place of homicide at

about the time when it occurred. He was shown to have been in company with the other defendants who were indicted, but not tried, immediately before the homicide, and engaged in controversy with other persons at such time. His attempt at concealment on the day following the homicide is another cicrumstance tending to show his participation in the crime, and for these reasons we think that this contention is not well taken.

The second ground of the objection is that the evidence does not disclose that the defendant understood and could speak English, but it is sufficient to say in this connection that the evidence of the state was to the contrary, and therefore there was a conflict of evidence on this point, for which reason the second ground cannot be favorably considered.

[**12**] The third ground urged is that the witness McGuire questioned the defendant, and held out some hope or promise for the purpose of getting a statement from the accused, and is based upon the fact that the witness McGuire testified under cross-examination as follows:

"I told Crist when I was talking to him that if he would come and tell me the truth, it might be easier on him than it would be to try and hide it, after I started the conversation."

The witness also further testified in the same connection as follows:

"I said it might make it easier for him if he would confess it, or something that way, or I told him if he would come through and tell it, it might be better for him, after he and I had had the conversation for some time, but not in the beginning."

So far as the record discloses, whatever might have been said to the defendant or accused by way of inducement to make a confession was stated after he had volunteered to explain his connection with the matter. It seems clear that before these statements were made by the witness to the accused, the accused had said, as testified to by the same witness:

"I asked him how many men killed ¡Sem Tomas, and he said, 'Two,' and I asked him if it was not three, and he said, 'No; only two did it.' He said, 'Louis and I did it,' and shortly after that he said, 'No; Louis did it.'"

The last statement made by the accused, while in response to a question addressed to him, which did not assume the guilt of the accused, was apparently responded to voluntarily, and during the trial of the case he did not assert at any time that the answer, which was in reality an attempt at justification of his connection with the transaction, was elicited by reason of any promise or inducement made to him. We do not believe that the record discloses that the statement was made under such circumstances. In the case of State v. Ascarate, recently handed down and reported in 153 Pac. 1036, this court said:

"No hard and fast rule" could be laid down "which would serve as a test in every instance [as to the voluntary nature of the confession], but each case must be determined upon its own circumstances."

Tested by this rule, we conclude that the statement of the accused which is here objected to was voluntarily made, and that the objection presented by the brief of appellant under the third ground referred to is therefore not well taken.

[6] The next proposition of appellant, which is only briefly referred to without argument, is that the verdict of murder in the second degree is contrary to the evidence, and also contrary to the law applicable to the issues involved, for which reason the court erred in overruling the motion for a new trial. In the case of State v. Gonzales, 19 N. M. 467, 144 Pac. 1144, this court said:

"Ordinarily the verdict of a jury will not be disturbed in the appellate court when it is supported by any substantial evidence."

—and we conclude, after an examination of the record, that the verdict in this case is supported by substantial evidence; therefore cannot consider that the contention of appellant is meritorious.

[**13**]  Appellant assigns error in overruling the motion in arrest of judgment, contending that the appellant and two others were indicted for the murder of Tomas, and that the record discloses that the case proceeded to trial as to appellant only, and that the judgment and sentence of the court pronounced upon appellant is illegal and void, and cannot be predicated upon the verdict because of its indefiniteness as to what person was found guilty, since the names of the three defendants were placed in the caption of the verdict, and the name of the defendant tried and found guilty was not inserted in the body of the verdict. It is pointed out by the Attorney General that this objection was raised ten days after the verdict had been rendered, and there is nothing to indicate that the attention·of the trial court was called to the matter at the time of the rendition of the said verdict.

It would seem to be the better practice to require the defendant to call attention to an objection of this kind more promptly than was done in the case at bar, but we prefer to dispose of the matter without basing it upon the technical grounds stated, which, however, find support in the case of Gillum v. Commonwealth, 121 S. W. 445, in which case the Supreme Court of Kentucky said:

"Allowing the jury to be discharged without objection, and without motion to have them correct or extend their verdict, will be deemed a waiver of formal defects in it.· And it must then affirmatively appear that the substantial rights of the accused have been prejudiced by the informality."

It has, however, been held that:

"When three parties are indicted and two of them have been arrested and tried, a verdict of guilty has reference only to the two on trial. It was not necessary for the jury, when returning the verdict, to refer to the two defendants on trial as the parties to be affected by the verdict." State v. Chambers, 45 La. Ann. 36, 11 South. 944.

To the same effect is Hronek v. People, 134 Ill. 139, 24 N. E. 861, 8 L. R. A. 837, 23 Am. St. Rep. 652, and Hughes v. Comm. (Ky.) 14 S. W. 682. In the latter

case it is true that the verdict found against the "within named defendant," two persons having been jointly indicted, and appellant only, however, being on trial. See, also, State v. Williamson, 65 S. C. 242, 43 S. E. 671; Archbold's Crim. Prac. & Proc. vol. 1, p. 318.

We, therefore, conclude that where three parties are jointly indicted and one of them has been arrested and tried, a verdict of guilty has reference only to the one on trial, and it is not necessary for the jury, in returning its verdict, to refer to the defendant on trial as the party to be affected by the verdict.

For the reasons stated, we find no error in the record, and the judgment of the trial court is therefore affirmed; and it is so ordered.

ROBERTS, C.J., and PARKER, J., concur.

## ON MOTION FOR REHEARING.

HANNA, J.—The first four grounds of the motion deal with points raised by the brief of appellant, which, it is claimed, have been overlooked by this court in its decision, but a re-examination of the opinion and the record clearly shows that the contention is not well founded, as the several points in question were considered in the opinion, and we find no reason for departing from our conclusion arrived at.

[14] The fifth and sixth grounds of the motion raise a question which counsel for appellant admit they failed to call to the attention of the court in either the briefs or argument made on his behalf, the ground being that the opinion of this court is in conflict with sections 12 and 18, art. 2, of the Constitution of New Mexico, and of section 1 of the Fourteenth Amendment of the Constitution of the United States, in that due process of law has been denied appellant by permitting the testimony of the witness McGuire to stand and in the admission of the testimony of the state as a whole, and in the giving of the instructions of the court as a whole. These several grounds, which, it is asserted, amount to a denial of due process of law, upon the most favorable view of the matter, can be said to constitute nothing more than er-

roneous decisions of the trial court in the admission of evidence, or in the instructions as given by the court, and are to be controlled by the rule laid down in 6 R. C. L. p. 445, where it is said:

"The rule is well established that a state cannot be deemed guilty of a violation of its constitutional obligation (nor shall any state deprive any person of life, liberty, or property without due process of law) simply because one of its courts, while acting within its jurisdiction, has made an erroneous decision."

See, also, Arrowsmith v. Harmoning et al., 118 U. S. 194, 6 Sup. Ct. 1023, 30 L. Ed. 243.

For the reasons stated the motion is denied.

ROBERTS, C.J., and PARKER, J., concur.