**STATE of Missouri, Respondent,**

v.

**Lee Estus McCULLEY, Appellant.**

**No. 47082.**

Supreme Court of Missouri,

Division No. 2.

Sept. 14, 1959.

128

No appearance for appellant.

John M. Dalton, Atty. Gen., Julian L. O'Malley, Asst. Atty. Gen., for respondent.

LEEDY, Justice.

Lee Estus McCulley and his half brother, Floyd Andrew Gray, were jointly charged in the Circuit Court of the City of St. Louis with burglary in the second degree, and stealing property of the value of at least fifty dollars. For the purpose of enhancing the punishment, in the event of conviction, the amended information upon which the case was tried also alleged (RSMo 1949 § 556.280, V.A.M.S.) their former convictions on numerous charges of felony (seven as to McCulley), their incarceration in the Missouri penitentiary thereunder, and subsequent discharges upon lawful compliance

with their sentences. A severance was granted, and upon his separate trial, the jury returned a verdict finding McCulley (hereinafter referred to as defendant) not guilty of the burglary, and further finding him "guilty of stealing of a value of $50 or over and of a prior conviction or convictions of a felony," and assessed his punishment at "ten years in the State Penitentiary." Defendant appeals from the judgment entered and sentence pronounced in accordance with the verdict.

The case is here on a full transcript of the record, it having been ordered furnished at the cost of the state; but defendant has filed no brief. We look, then, to the assignments of his motion for new trial for the points to be relied on for reversal of the conviction. From a reading of the record, it is not to be wondered that the motion for new trial fails to challenge the sufficiency of the evidence to support the verdict.

The premises alleged to have been burglarized were located at 25 South Compton in the City of St. Louis, being an elementary school building of the St. Louis Board of Education known as Waring School. The property allegedly stolen (the ownership of which was laid in "St Louis Board of Education, a corporation, in the care and custody of the said Waring School") consisted of a Philco television set of the value of $150, and various items of groceries of the value of $100, or a combined total value of $250.

In summary, the state's evidence was that about 4:45 A.M., on January 10, 1958, a Packard car (driven by defendant's father, Ben McCulley, in which defendant and his half brother, Floyd Andrew Gray, were riding—all three in the front seat) had stopped for a traffic light at the intersection of Theresa and Lindell when the lid of the trunk spontaneously opened. As the car was thus stopped a police officer (Charles Douglas), driving a one-man patrol car, approached the intersection from the rear of the Packard, and observed a television set taking up most of the space in the trunk. He stopped his car (lights on) perhaps 15 feet to the rear, and somewhat to the left of the Packard. He saw defendant close the lid of the trunk as he, the officer, walked toward the Packard. He walked around to the left side of the Packard, and spoke first to the two men in the front seat (Ben McCulley and Floyd Andrew Gray), and ordered them "to come out and keep their hands where I could see them." At this juncture, and by the merest chance, a fellow police officer came upon the scene. The officers then observed large quantities of foodstuff on the rear seat and on the floor of the rear part of the car—"blocks of hamburger something like 6 inches square and 2 feet long;" also large quantities of ice cream in gallon cartons, 15 or 20 of them. Defendant and his two companions were then placed under arrest for "suspected burglary."

The police officer then and there put the question to defendant as to where he had obtained the property, in reply to which defendant "stated that he, along with Floyd Gray, had burglarized the school at 25 South Compton, which is the Waring School, and had obtained the television set and also the foodstuffs at that location." He elaborated by telling how Gray had broken a window at the school with a brick, and entered the building through the broken window, and he (defendant) followed, after which they entered the school cafeteria, located certain foodstuff and a television set and carried them out of the building and into a garage across the alley from the school, and then called his father to come down and pick them up.

The school was eight blocks distant from the intersection where the arrests were made. Officer Douglas radioed for more assistance and a cruiser, and on arrival the foodstuff and television were placed in the cruiser along with the arrested persons, and all taken to the Waring School, where defendant and Gray showed the officers how they gained entrance to the school.

Defendant was questioned later the same day at the police station, and in the presence of the principal of the school and the cus-

todian, he again related the story he gave at the time of his arrest.

The defense was that Gray alone burglarized the building, stole the property in question which was found therein, and placed it in the trunk of the car, all without defendant having the slightest knowledge thereof. Gray so testified and thereby corroborated defendant's statement as to the latter's want of knowledge. The points relied on make it unnecessary to detail the wholly incredible story each told as to their movements on the night in question under which it was supposedly possible (because of the very brief interval during which they were separated) for defendant not to have known of Gray's burglary and his stealing of the property in question. Under defendant's evidence, the only controverted fact issue remaining in the case was that of defendant's complicity in the crime, and his own admission made that a question for the jury. The jury saw fit to believe the state's evidence in that regard, and to disbelieve that on the part of defendant.

■ It is objected that defendant's admissions as to the circumstances under which he obtained ·the television set and foodstuff were erroneously received in evidence because there was no prior showing that he had been apprised of his right ("statutory" is the descriptive adjective used in this connection in making objection at the trial, for which "constitutional" has been substituted in the motion for new trial) not to make damaging admissions or statements. We are aware of no statutory or constitutional provision which requires, as a condition to an on-the-spot interrogation of an arrested suspect by a policeman, that there be any such admonition or warning. The ultimate test of the admissibility of admissions against interest and confessions is that of voluntariness. Here there is not the slightest suggestion of any want of voluntariness on defendant's part in making the admissions now challenged.

A substantially similar situation was considered and determined adversely to the instant defendant's contention in the recent case of State v. Laspy, Mo., 323 S.W.2d 713, 716–717 (although the objection there was more particularized). Held: "[T]here being nothing to impeach the voluntariness of the statement (the state's showing in that regard having been sufficient to at least make it a jury question), 'the fact that the officer did not caution or warn the accused that it might be used against him does not render the confession inadmissible.' State v. Hoskins, 327 Mo. 313, 317, 36 S.W.2d 909, 910; State v. Evans, 345 Mo. 398, 406, 133 S.W.2d 389, 393; State v. Johnson, 316 Mo. 86, 92, 289 S.W. 847, 849." See, also, State v. Barrington, 198 Mo. 23, 109, 95 S.W. 235, 263.

■ Error is charged in receiving in evidence in support of the habitual criminal aspect of the charge certified copies of the records of defendant's seven prior convictions in the Iron County Circuit Court (under which he was sentenced to six terms of five years each for burglary and larceny, and one for three years for burglary, all to run concurrently), together with the record of his imprisonment in the Intermediate Reformatory and his discharge from the Missouri State Penitentiary to which institution he was later transferred. Defendant's objections to these documents, as sufficiently preserved by his motion for new trial, are that they were hearsay and were not connected with the defendant. These objections are not tenable because the defendant voluntarily took the stand and on cross-examination admitted all such convictions, his incarceration and discharge as of the very dates shown by the prison records. Had there been error in originally receiving these documents, and we perceive none, it is certain that no prejudice could have resulted in view of defendant's own admissions. State v. Kimbrough, 350 Mo. 609, 166 S.W.2d 1077; State v. Marlin, Mo., 177 S.W.2d 485, 488

■ State's instruction No. 4 (separately submitting stealing, in the event of acquittal of the burglary), under which defend-

ant was convicted, hypothesized ownership of the allegedly stolen property as being in "St. Louis Board of Education, in the care and custody of Waring School." It also hypothesized the values of such property as follows: "One Philco make T.V. of the value of one hundred and fifty dollars; various items of groceries, of the total value of one hundred dollars; all of the combined value of two hundred fifty dollars, *or any part thereof of the value of fifty dollars or more,* with the felonious intent," etc. (Emphasis supplied.)

It is objected that it was error to submit the hypothesized valuation of $150 on the television "when," says defendant's motion for a new trial, "there was no such evidence in the case, the only evidence being that it had been purchased at a price of $197.95 three weeks before its theft." The hypothesization of a lesser value than that shown by the evidence is not a matter of which defendant may complain because not prejudicial to him. Under the charge of stealing and the facts of this case, values become important only in the matter of determining the quality of the offense as being a felony or misdemeanor, and, in consequence, the punishment to be assessed; and the instruction properly observed this requirement, and protected defendant's rights in that connection by the phrase we have italicized.

■■ Defendant also complains of the submission of the hypothesis of ownership of the property in the St. Louis Board of Education "when there was absolutely no evidence of that fact adduced at the trial, the only evidence being that the items were in the Waring School, an elementary school in St. Louis, Missouri." As regards the television set, this contention overlooks the testimony of the custodian of Waring School, who, when asked if he had ever before seen the television set then exhibited to him (Exhibit 2), answered, without objection: "Yes. That is our television. It belongs to the school." It follows that if it belonged to the school, it belonged to the school district or board. Consequently, we

think the showing sufficient whereon to submit the stated hypothesis of ownership of the television set; but the evidence as to the ownership of the groceries and their value is not so clear. Indeed, as to them, we find no direct evidence in the record as to either element, but we need not develop whether the proofs were sufficient to make those matters, or either of them, appear circumstantially, this because of the matters we now treat. Defendant's defense was that although the property in question had been stolen by his codefendant, Gray, he had had no part therein, or knowledge thereof. To sustain this defense he called Gray to the stand, and thereby vouched for the latter's credibility. Gray testified he stole the television and the foodstuff. The state proved the value of the television to be at least $50, to wit, $194.95, and the jury returned a verdict of "guilty of stealing of a value of $50 or over." Such a verdict under a charge of stealing several articles of specified values "is a finding that the defendant stole all of them, and that their several values were as averred, *or at least that their aggregate value is sufficient to constitute the crime charged.*" (Emphasis supplied.) State v. Kelliher, 32 Or. 240, 50 P. 532. See, also, 52 C.J.S. Larceny § 98, p. 914.

■ We have examined the two offending references in the argument of the prosecutor of which the motion for new trial complains. In one he stated that except for the fact of the theft, the school "might be instructing the little kids to look at that television set." An objection that this was "not relevant to the issue of guilt or innocence of this defendant" was overruled, and the argument proceeded thus (without objection or request for further restraint upon the prosecutor): "As I say, the little kids look at that set, and how often they get educational value from the programs that are brought on the television over the air. And the ice cream, and hamburgers, and the other—actual food that the kids eat in the lunchroom, would be gone, taken by two men, * * *." Broad discretion is vested in the trial court in the

matter of controlling argument of counsel. The foregoing action of the trial court, upon the objection there interposed, does not appear to have been erroneous or prejudicial. By no stretch of the imagination could it be said to have amounted to an abuse of discretion. The assignment is disallowed.

No reversible error appears in those parts of the record which we examine under Rule 28.02, 42 V.A.M.S., irrespective of whether error thereon is assigned. However, the ineptness of the language of the verdict on the habitual criminal aspect of the case by which defendant was found "guilty" of a prior conviction or convictions, while roundly condemned in State v. Ash, Mo., 286 S.W.2d 808, is not fatal to the validity of the verdict. The information, allocution, judgment and sentence appear to be regular. Judgment affirmed.

All concur.